# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **DEMANCE BEASLEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 3:16-cv-3010 |
| ) | |
| **WARDEN BRUCE WESTBROOKS et al.,** ) | Chief Judge Sharp |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Plaintiff Demance Beasley is a state prisoner incarcerated at the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee. Before the court is Plaintiff's application to proceed *in forma pauperis*. (ECF No. 2). In addition, Plaintiff has filed a complaint for civil rights violations under 42 U.S.C. § 1983 against Defendants Warden Bruce Westbrooks; Sgt. Bryan Tyner; Cpl. B. McClure; Sgt. Deneice Bah and Cpl. Robin Fish, which is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. Application to Proceed *In Forma Pauperis*

Under 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee of $350 required by 28 U.S.C. § 1914(a). Because the plaintiff properly submitted an *in forma pauperis* affidavit, and because it appears from his submissions that the plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance, the application (ECF No. 2) will be granted.

Nevertheless, under § 1915(b), Plaintiff remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs' the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff will be assessed the full $350 filing fee, to be paid as directed in the order accompanying this memorandum opinion.

**I.      Standard of Review**

Under the PLRA, the court must conduct an initial review of any civil complaint brought by a prisoner if it is filed *in forma pauperis*, 28 U.S.C. § 1915(e)(2), seeks relief from government entities or officials, 28 U.S.C. § 1915A, or challenges the prisoner's conditions of confinement, 42 U.S.C. § 1997e(c). Upon conducting this review, the court must dismiss the complaint, or any portion thereof, that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A; 42 U.S.C. § 1997e(c). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-

pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "*Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The Court is not required to create a claim for the plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"). To demand otherwise would require the "courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). Finally, the Court need not sift through exhibits attached to Plaintiff's complaint in order to determine what, if any, basis exists for Plaintiff's claims against Defendants. *See Jackson v. Lawrence Corr. Ctr. Heatlh Care,* No. 15-cv-00082-JPG, 2015 WL 603853, at *2 (S.D. Ill. Feb. 12, 2015).

## II. Factual Allegations

Plaintiff alleges that on July 13, 2016, Defendant Westbrooks approached his cell during cell inspection and commented on some debris on Plaintiff's sink and writing on Plaintiff's cell door. Plaintiff explained that the writing on the door was there before Plaintiff moved into the

3

cell, but that he never asked for cleaning supplies to remove the writing because Defendant Bah and her officers "catch attitudes when asked for cleaning supplies." (Complaint, ECF No. 1 at Page ID#6.) Defendant Westbrooks told Defendant Bah to give Plaintiff some paint so he could re-paint the door. (*Id.*) Defendant Westbrook left the area of Plaintiff's cell. (*Id.*)

Plaintiff alleges that, to spite him, Defendant Bah told Defendant Westbrooks that Plaintiff was a gang member and that he had written on the door. (*Id.*) Plaintiff is aware of this conversation between Defendants Westbrook and Bah because another inmate heard the conversation and told Plaintiff about it. (*Id.*)

Defendants Westbrooks and Bah came back to Plaintiff's cell to take pictures of the writing on Plaintiff's door. (*Id.*) Two days later Plaintiff was written up, presumably for the writing on his door. (*Id.* at Page ID# 8.)[1] Plaintiff alleges that although there were five letters on the door, Defendant Bah took pictures of only two of the letters. (*Id.*) The pictures were sent to the Security Threat Group (STG) Coordinator, Defendant Fish, who determined that the two letters were gang related. (*Id.*) Plaintiff was written up for possession of gang-related material.

On July 15, 2016, Defendant Westbrooks approached Plaintiff's cell while conducting cell inspections and noticed that the writing was still on Plaintiff's door. (*Id.*) According to Plaintiff, Defendant Westbrooks "became irate saying how much disdain he had for 'Black Gang Members' and proceeded to take out his ink pen and write on the door 'O.G. Sucks Big Dicks'." (*Id.* (emphasis in original)) Plaintiff told Defendant Westbrooks that his behavior was very unprofessional. (*Id.*) Defendant Westbrooks "became even more irate and told [Plaintiff that he] was going to clean it." (*Id.*) Plaintiff alleges that he told Defendant Westbrooks that he would not clean off what Defendant Westbrooks had written because what Defendant Westbrooks did

---

[1] Page ID # 7 and Page ID# 8 were reversed in Plaintiff's complaint. Thus, citations to Page ID# 8 come before citations to Page ID# 7.

"was disrespectful, racist and unethical." (*Id.*) Defendant Westbrooks then told a member of the "cert team," who had witnessed Defendant Westbrooks' behavior, to take Plaintiff to segregation. (*Id.*)

On July 18, 2016, Unit 4 Counselor Don Ferguson and Classification Coordinator Tom Rushing, neither of whom is a Defendant, "held a special re-class to re-class me to maximum custody." (*Id.*) Plaintiff alleges that Ferguson and Rushing falsified documents to make his custody-level points higher than they really were and when Plaintiff pointed out the errors in their calculations, Ferguson and Rushing plotted with Defendant Tyner, the disciplinary chairperson, so that Plaintiff would be found guilty on a disciplinary infraction that Defendant Bah had written two-days earlier. (*Id.*) As a result, Plaintiff's custody level points were increased.

On July 21, 2016, Defendant Tyner held Plaintiff's disciplinary infraction hearing, but refused to allow Plaintiff to call any witnesses, would not allow him to see the evidence against him and would not allow him a continuance of the hearing. (*Id.*) Plaintiff alleges that Defendant Tyner's behavior violated Tennessee Department of Correction (TDOC) Uniform Disciplinary Procedures (TDOC Index# 502.01). (*Id.* at Page ID## 7-8.) Defendant Tyner permitted Defendant Bah to call Defendant Fish as a witness at the hearing. (*Id.* at Page ID# 7.) Defendant Fish stated that there were only two letters present in the pictures he received. (*Id.* at Page ID# 7.) Even though Plaintiff explained that there were actually five letters on the door, Defendant Tyner found Plaintiff guilty of possession of gang-related material.[2] (*Id.*) At the end of the hearing, Plaintiff asked for appeal papers, but was denied the appeal process. (*Id.*)

---

[2] Although Plaintiff alleges that Defendants Bah, Fish and Tyner found him guilty of the disciplinary violation, it is clear from Plaintiff's allegations that Defendant Bah and Fish were witnesses at the hearing which was conducted by Defendant Tyner, who is, according to Plaintiff, the disciplinary chairperson. (ECF No. 1 at Page ID## 7-8.)

Apparently in connection with the disciplinary hearing, Plaintiff filed a grievance with Defendant McClure, the grievance chairperson. (*Id.*) Plaintiff alleges that every grievance he filed was either lost or sent back. (*Id.*) As a result, Plaintiff was never given a fair chance to exhaust his administrative remedies. Plaintiff "tried outside influence" but was retaliated against by having his phone account deactivated and his mail never reached its destination. (*Id.*) Plaintiff alleges that Defendant McClure failed to allow him to "exercise my right to the grievance procedures" because deadlines lapsed before his grievances were returned and one grievance sat at Level I for weeks before it was sent back (*Id.*) Plaintiff wrote a Title VI grievance against Defendant Westbrooks and also wrote grievances on Defendants Bah, Tyner, Fish and McClure, all to no avail. (*Id.*) Plaintiff's grievances were held for approximately two weeks before being returned unprocessed or not returned at all. (*Id.*) Plaintiff asked Defendant McClure about his grievances and she stated that she "didn't care" and wrote a disciplinary infraction against Plaintiff for defiance. (*Id.*) Plaintiff never received a copy of the infraction nor was he given an opportunity to prepare for the hearing. (*Id.*) Defendant Tyner held the disciplinary proceedings without Plaintiff, even after Sergeant Northam, who is not a defendant, advised him that Plaintiff never received a copy of the infraction, which was another violation of TDOC procedures. (*Id.* at Page Id## 7, 9.)

Plaintiff alleges that Defendant Westbrooks and his staff continue to "intentionally inflict emotional distress" upon him by putting him through "all of this" knowing that he "lost his mother a few month ago." (*Id.* at Page ID# 9.) Plaintiff alleges that his recreation and telephone privileges are "constantly" being taken away as retaliation. (*Id.*) Plaintiff also alleges that "[d]uring an institutional shakedown they sent officers in my cell to steal my stamps and trash my envelopes so I couldn't send any mail out." (*Id.*) Plaintiff was told to fill out a claim form, which he did, three times, but he never heard anything back nor did he receive compensation for

the destruction and theft of his property. (*Id.*)

Plaintiff states that as a result of the treatment he is receiving at RMSI, he has been on a hunger strike and he has contemplated and made multiple plans to commit suicide.

Plaintiff asserts claims for retaliation, violation of his right to due process and his right to use the grievance process.

As relief, Plaintiff seeks release from maximum security, expungement of his two disciplinary infractions—one for "P.G.M.," which the court surmises, means possession of gang-related materials, and one for defiance, for his classification points to be recalculated, and for compensatory damages.

## III. Discussion

### A. Retaliation

Plaintiff alleges that Defendants retaliated against him. While it is not entirely clear, he appears to allege that Defendant Bah retaliated against him by claiming he was a gang member and that he had written on his cell door, Defendant Fish retaliated against him by finding that the writing on his door was gang-related, Defendant Tyner retaliated against him by finding him guilty of possessing gang-related material, Defendant McClure retaliated against him by writing him a disciplinary infraction for defiance and Defendant Westbrooks retaliated against him by sending him to segregation. Largely missing from Plaintiff's allegations are any facts to suggest that he was engaged in protected conduct and that such conduct motivated Defendants to retaliate against him.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

7

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendants' allegedly retaliatory conduct. *See Smith v. Campbell,* 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

It is well understood that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin–Bey v. Rutter,* 420 F.3d 571, 580 (6th Cir. 2005). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy v. Lane,* 833 F.2d 106, 108 (7th Cir. 1987). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin–Bey,* 420 F.3d at 580 (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert,* 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted).

Plaintiff's allegations fail to state a claim for retaliation against Defendants Bah, Tyner or Fish. First, with respect to these Defendants, Plaintiff fails to allege that he was engaged in any constitutionally protected conduct. Second, even if he had alleged that he was engaged in constitutionally protected conduct, he does not allege any facts to suggest that a causal connection existed between his conduct and the Defendants allegedly retaliatory behavior. Even if Plaintiff meant to suggest that his grievance writing was the cause of these Defendants' allegedly retaliatory behavior, he fails to suggest a causal connection between his grievance writing and their conduct. As a result, Plaintiff's allegation against Defendants Bah, Tyner and Fish fail to provide sufficient facts to "raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. Consequently, he fails to state a retaliation claim against them.[3]

Plaintiff has however sufficiently stated a claim for retaliation against Defendants Westbrooks and McClure. With respect to Defendant Westbrooks, Plaintiff alleges that after he complained about Defendant Westbrooks use of foul language and refused to clean off the offensive words Defendant Westbrooks wrote on his cell door, Defendant Westbrooks directed a "cert team" to take Plaintiff to segregation. With respect to Defendant McClure, Plaintiff alleges that he asked Defendant McClure about his grievances, and in response, she told him she "didn't care" and wrote a disciplinary infraction against Plaintiff for defiance, which resulted in Defendant Tyner conducting a disciplinary hearing.

At this juncture, Plaintiff has sufficiently stated a claim for retaliation against Defendants Westbrooks and McClure. *See Thaddeus-X,* 175 F.3d at 396 (noting that retaliatory transfer to administrative segregation is adverse action.)

B. Due Process

Plaintiff alleges that Defendant Tyner violated his due process rights by failing to give him adequate notice of the charges against him, refusing to allow Plaintiff to call any witnesses, refusing to allow Plaintiff to see the evidence against him, and refusing to give Plaintiff a continuance so that he could adequately prepare for the hearing. Additionally, Plaintiff alleges that he was falsely convicted of a disciplinary infraction in order to raise his custody level, which would allow him to be reclassified and held in maximum custody. Finally, Plaintiff alleges that he was denied the right to appeal.

---

[3] Although Plaintiff's complaint is full of allegations about retaliation, for example he complains that his recreation and telephone privileges are being taken in retaliation and that his stamps were stolen and his envelopes destroyed in retaliation, he fails to connect these instances of alleged retaliation with any Defendant or with any protected conduct. Moreover, even if he had alleged that he was engaged in protected conduct, he fails to allege any facts to suggest a causal connection between the protected conduct and the alleged retaliation.

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Pro'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). The Due Process Clause itself confers no liberty interest "in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *Martucci v. Johnson*, 944 F.2d 291, 294 (6th Cir. 1991) ("The federal Constitution, standing alone, does not confer upon prisoners a 'liberty interest' in any particular form of confinement"). However, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations," where the confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U. S. at 484 (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)).

Plaintiff fails to allege any facts to suggest that he has suffered an "atypical and significant hardship" sufficient to support a finding that he had a liberty interest in avoiding reclassification or confinement in maximum custody. *See Sandin*, 515 U.S. at 484 (finding no due process violation where inmate was placed in disciplinary confinement for 30 days); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (finding no "atypical and significant hardship" where disposition of classification hearing required transfer to a prison in another state). In the absence of any facts from which the Court can discern that Plaintiff possessed a liberty interest in not being reclassified or confined in maximum custody, Plaintiff fails to state a due process claim against Defendant Tyner or any other Defendant involved in the disciplinary proceeding.

C.  Grievance Process

Plaintiff alleges that he has a right to engage in the grievance process and that this right was violated by Defendant McClure when she failed to consider his grievances.

To the extent Plaintiff alleges that he has a due process right to engage in the grievance process, he fails to state a claim. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

To the extent Plaintiff alleges that he has a First Amendment right to engage in the grievance process, he also fails to state a claim. While the Sixth Circuit has determined that an inmate has a First Amendment right to file grievances against prison officials, this right is protected only if the grievances are not frivolous. *See Herron v. Harrison,* 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff fails to allege any facts from which the Court can discern whether any of the grievances that Defendant McClure allegedly ignored were non-frivolous. While the pleading of *pro se* litigants are entitled to a liberal construction, *Erickson*, 551 U.S. at 94, the court is not required to make "unwarranted inferences based on the alleged facts." *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 276 (6th Cir.2010). Consequently, Plaintiff fails to state a claim for violation of his First Amendment right to file a grievance.

    D. Emotional Distress

To the extent that Plaintiff intended to allege an Eighth Amendment claim as a result of his confinement in "maximum custody," he fails to state a claim. To establish an Eighth Amendment claim, the Plaintiff must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Plaintiff has not

alleged any facts to suggest that his basic human needs and requirements were not, or are not, being met.

To the extent Plaintiff intends to allege a claim for intentional infliction of emotional distress under state law, he likewise fails to state a claim.

To establish a claim for intentional infliction of emotional distress, Plaintiff must show that a specific defendants' conduct was "(1) intentional or reckless; (2) so outrageous that it cannot be tolerated in a civilized society; and (3) the cause of serious mental injury to the plaintiff." *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997). In determining whether conduct is outrageous,"[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *See* Dillingham v. Millsaps, 809 F.Supp. 2d 820, 855-56 (E.D.Tenn. 2011) (citing Restatement (Second) of Torts, Section 46, Comment D.)

Plaintiff has failed to allege that any Defendant engaged in conduct "beyond all bounds of decency." *Id*. Consequently, he fails to state a claim for intentional infliction of emotional distress.

V. **CONCLUSION**

For the reasons set forth herein, Plaintiff's complaint will be dismissed, except for his claims against Defendants Westbrooks and McClure for retaliation, which shall be referred to the Magistrate Judge for further proceedings as described in the accompanying order. An appropriate order is filed herewith.

                                                                                                              *Kevin H. Sharp*
                                                                                                              Kevin H. Sharp
                                                                                                              Chief United States District Judge