UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEMANCE BEASLEY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>BRUCE WESTBROOKS and<br>BRANDI MCCLURE,<br><br>　　　　Defendants. | Case No. 3:16-cv-03010<br>Honorable Laurie J. Michelson<br>Magistrate Judge Barbara D. Holmes |

**OPINION AND ORDER ACCEPTING REPORT AND RECOMMENDATION [60]
AND DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION [49]**

When he filed this case, Plaintiff Demance Beasley primarily complained about how corrections officers handled (or, from Beasley's perspective, mishandled) a writing on his cell door. Beasley says that Defendant Bruce Westbrooks, then the warden at Beasley's facility, yelled and used racist language when he saw that the writing had not been removed. When Beasley contested the warden's language, Westbrooks' allegedly retaliated with segregation. Beasley also says that he attempted to grieve several officers for retaliation stemming from the writing, but Defendant Brandi McClure did not process his grievances. And when Beasley inquired about the grievances, McClure allegedly retaliated with a disciplinary infraction. All of this happened in July 2016 or not too long thereafter.

Nine months after Beasley filed his lawsuit, he filed a motion for a temporary restraining order and a preliminary injunction. (R. 49.) He claims that corrections officers other than the two defendants to this action have engaged in a number of harassing and retaliatory acts beginning in May 2017.

Magistrate Judge Barbara D. Holmes, to whom all pretrial matters are referred, recommends that Beasley's motion for injunctive relief be denied. (R. 60.) Among other things, she points out that Beasley seeks to enjoin non-parties and that the harm he now complains of is unrelated to the allegations of the complaint. Beasley objects. (R. 63.) The Court, having considered these two issues, largely agrees with Magistrate Judge Holmes. Beasley's motion will be denied.

I.

A.

Although presented as facts, the following are merely the allegations of Beasley's complaint. (R. 1.)

In July 2016, Bruce Westbrooks, the warden of Beasley's correctional facility, inspected Beasley's cell. (R. 1, PID 6.) Westbrooks noticed writing on the door. (R. 1, PID 6.) Beasley explained that the writing had been there but corrections officer De'neice Bah-Scott and her officers would "catch attitudes" when asked for cleaning supplies. (R. 1, PID 6.) Westbrooks told Bah-Scott to provide Beasley with paint so that Beasley could repaint the door. (R. 1, PID 6.) Bah-Scott, "being spiteful," told the warden that Beasley was a "gang member" and that it was Beasley who had written on the door. (R. 1, PID 6.) Bah-Scott took a picture of the writing—but only captured two of its five letters—and sent the picture to corrections officer Robin Fish. (R. 1, PID 6.) Fish deemed the two letters gang related and Beasley was "written up" for possessing gang material. (R. 1, PID 6, 8.)

Two days later, Westbrooks returned to Beasley's cell and noticed that the writing was still there. (R. 1, PID 8.) Beasley explains: "He then became irate saying how much disdain he had for 'Black Gang members' and proceeded to take out his ink pen and write on the door 'O.G

2

Sucks Big Dicks.'" (R. 1, PID 8.) Beasley told Westbrooks that his conduct was "very unprofessional" prompting Westbrooks to become angrier and to order Beasley to "clean it." (R. 1, PID 8.) Beasley refused, on the grounds that Westbrooks' conduct was "disrespectful, racist, and unethical." (R. 1, PID 8.) Westbrooks then told the "cert team" to send Beasley to segregation. (*See* R. 1, PID 8.)

Later in July 2016, corrections officer Bryan Tyner held a disciplinary hearing on the gang-writing charge. (R. 1, PID 8.) According to Beasley, the hearing was rife with procedural unfairness, including that Beasley was not permitted to call witnesses while Bah-Scott was able to call Fish. (R. 1, PID 8.) Beasley was found "guilty for the possession of gang-related material." (R. 1, PID 7.) This apparently resulted in an increase in Beasley's custody-level points which, in turn, resulted in maximum-security placement. (R. 1, PID 8.) Beasley tried but was not permitted to appeal the guilty determination. (R. 1, PID 7.)

Beasley then filed (or attempted to file) grievances. But Brandi McClure, the grievance chairperson, "failed to allow [Beasley] to exercise [his] right to the grievance procedures." (R. 1, PID 7.) Beasley attempted to contact people outside of prison for help, but correctional staff retaliated by deactivating Beasley's phone account. (R. 1, PID 7.) And Beasley's mail never reached its destination. (R. 1, PID 7.) Beasley wrote a Title VI grievance on Westbrooks (Title VI precludes discrimination in programs that receive federal funding) and wrote grievances on Bah-Scott, Tyner, Fish, and McClure. (R. 1, PID 7.) But the grievances were held for two weeks and then either returned as unprocessed or not returned at all. (R. 1, PID 7.) Beasley says, "I asked Cpl. McClure about them [and] she stated that she 'didn't care' and wrote a disciplinary infraction on me for defiance." (R. 1, PID 7.) Beasley never got a copy of this disciplinary infraction. (R. 1, PID 7.)

3

Unidentified corrections officers also "retaliat[ed]" by "constantly" taking Beasley's recreation and telephone privileges. (R. 1, PID 9.)

Further, "during an institutional shakedown [Westbrooks and his staff] sent officers into [Beasley's] cell to steal [his] stamps and trash [his] envelopes so [Beasley] couldn't send any mail out." (R. 1, PID 9.)

At the most general level, Beasley says, "I am being deprived of my rights and privileges secured by the constitution and laws. My due process rights ha[ve] been violated over and over again. . . . I am going through retaliation, humiliation, deprivation, and intimidation." (R. 1, PID 9.)

For the above conduct, Beasley sued Westbrooks, McClure, Bah-Scott, Tyner, and Fish. (R. 1, PID 2–3.) As relief, Beasley sought release from maximum security and his disciplinary infractions removed. (R. 1, PID 10.) Beasley also sought damages for "retaliation, deprivation, humiliation, intimidation," and the infliction of emotional distress by "Westbrooks and his staff." (R. 1, PID 10.)

**B.**

The district judge previously assigned this case, Judge Kevin Sharp, screened Beasley's complaint as is required by the Prison Litigation Reform Act. Judge Sharp found that Beasley had only adequately pled two claims: (1) that Westbrooks had unlawfully retaliated by ordering segregation after Beasley complained of Westbrooks' use of foul language and (2) that McClure had unlawfully retaliated by giving Beasley a disciplinary infraction after Beasley inquired about his unprocessed grievances. (R. 6, PID 45.) Judge Sharp dismissed the remainder of Beasley's claims. (*See* R. 6, PID 48.) Thus, Bah-Scott, Tyner, and Fish were dismissed from this case.

## C.

Nine months after filing this lawsuit, Beasley filed a motion for a temporary restraining order and a preliminary injunction. (R. 49.) For convenience, the Court again presents Beasley's allegations as fact without opining on whether they are true or false.

In May 2017, Beasley filed a grievance. He grieved that corrections officers had recently searched his cell and took notebooks and folders containing African American history, legal papers, religious materials, and a phone list. (R. 49, PID 318.) A grievance response indicates that an investigation was pending and that (former defendant) Fish would return the materials after the investigation was complete. (R. 49, PID 319.)

On July 17, 2017, Beasley filed another grievance. (R. 49, PID 314.) He grieved that he had sent a request form and legal documents to corrections officer J. Stanfill about a week earlier, but the papers had not been returned. (R. 49, PID 314–15.) In retaliation for the grievance, Stanfill "marred" Beasley's notes related to this case. (R. 49, PID 310.)

The next day, assistant attorney general Charlotte Davis, counsel for Westbrooks and McClure in this case, deposed Beasley. (R. 59, PID 487.) During the deposition, Davis requested that Beasley produce copies of the grievances that McClure allegedly had failed to process, including Beasley's Title VI grievance against Westbrooks. (*See* R. 59, PID 303, 327, 352.) Beasley explained to Davis that prior attempts to make copies of documents had been thwarted. (*See* R. 59, PID 351.) Davis responded that she would speak to the warden's secretary to ensure that the grievances would be copied. (R. 59, PID 351.)

Shortly thereafter, Warden Earl Lewis (Westbrooks' successor) asked corrections officer Joshua Robbins to get the papers to be copied from Beasley. (R. 49, PID 304.) When Beasley's file was returned, it was "all out of order" and the Title VI grievance against Westbrooks was

missing. (R. 49, PID 304.) Beasley raised the issue with Robbins, but Robbins said that he did not go through the papers or make any copies. (R. 49, PID 304.)

Beasley then had his brother call Davis. (R. 49, PID 304.) In response to that call, Davis wrote Beasley a letter explaining that she did not know what had happened to his papers, that she had a copy of the Title VI grievance, and that she was providing a copy of that grievance for Beasley's benefit. (R. 52, PID 355–59.) Beasley maintains—and Davis denies—that the missing papers were stolen at Davis' direction. (R. 49, PID 303.)

After the copying incident, Robbins retaliated with a "disciplinary report." (R. 49, PID 304.) The report stated that Beasley was "out of place" on July 28, 2017. (R. 49, PID 304, 321.) But this was impossible as "the pod was [on] lock down." (R. 49, PID 304.)

Bah-Scott, who had a "personal vendetta" against Beasley, served as Beasley's disciplinary chairman. (R. 49, PID 305.) Bah-Scott did not permit Beasley to introduce evidence of his innocence and told Beasley that he had to either admit his guilt or face segregation. (R. 49, PID 305, 320.)

Other corrections officers are also allegedly harassing or retaliating against Beasley. Dennis Davis, "who is in a personal relationship" with McClure, has not allowed Beasley to have the job he had held prior to "this incident in its entirety." (R. 49, PID 305.) At the direction of Lewis (the warden), corrections officer Grady Butler has taken "legal evidence" out of Beasley's mail. (R. 49, PID 306.) Further, Beasley's mail is also "being held for days on end." (R. 49, PID 306.)

Beasley is "constantly under threat, harassment, and intimidation." (R. 49, PID 303.) His cell is constantly rifled through resulting in stolen documents. (R. 49, PID 303.) Corrections officers are "doing everything in their power to hinder [Beasley's] legal claim." (R. 49, PID

303.) Beasley has "no access to the law library at all" and, aside from a shower, "is locked in [a] cell all but one hour" of the day. (R. 49, PID 303.)

As relief for all of this alleged conduct, Beasley asks this Court to enjoin two former defendants, Fish and Bah-Scott, along with Charlotte Davis, Dennis Davis, Lewis, Robbins, Butler, and Stanfill "from harassing, threatening, [and] intimidating" him and from "hindering [his] pursuit of a legal claim." (R. 49, PID 307.) Beasley says that the stress he is experiencing (in conjunction with his other medical conditions) may cause him to suffer "a stroke, heart attack or worse." (R. 49, PID 306.)

**D.**

All pretrial matters, including Beasley's motion for preliminary relief, have been referred to Magistrate Judge Barbara D. Holmes for either disposition or recommended disposition. (R. 9.)

Magistrate Judge Holmes recommends that Beasley's motion be denied. (R. 60.) She offers several independent grounds for denying Beasley's motion including that (1) "injunctive relief generally cannot be directed at individuals who are not defendants in the present action" and (2) Beasley's "requested relief is unrelated to the two narrow claims at issue in this action." (R. 60, PID 496.)

Among other objections, Beasley objects to both of these findings.

**II.**

When, as here, a party objects to a magistrate judge's report and recommendation (as opposed to an order) the Court reviews the objected-to issues *de novo*. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).

7

**III.**

**A.**

Having taken a fresh look at this issue, the Court will not enjoin the non-parties identified in Beasley's motion.

Generally, "a federal court is powerless to proceed to an adjudication" absent personal jurisdiction. *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (internal quotation marks omitted). This includes issuing an injunction. *See* Charles A. Wright *et al.*, 11A Fed. Prac. & Proc. Civ. § 2956 (3d ed.) ("The first prerequisite to obtaining a binding injunction is that the court must have valid *in personam* jurisdiction over the defendant.").

Here, the Court cannot exercise personal jurisdiction over Fish, Bah-Scott, Charlotte Davis, Dennis Davis, Lewis, Robbins, Butler, or Stanfill (the "Non-Parties"). None of these individuals were ever served with a summons and complaint. True, Fish and Bah-Scott were originally named as defendants in this case and the Court is to conduct service when, as here, a party proceeds *in forma pauperis*. (*See* R. 2, 5.) But Judge Sharp dismissed these two corrections officers prior to directing service because Beasley's claims against them were not viable. (*See* R. 5, PID 35.) As for the other individuals Beasley seeks to now enjoin (Charlotte Davis, Dennis Davis, Lewis, Robbins, Butler, and Stanfill), none were originally named as defendants. And Beasley has not sought to add them to his complaint. So there is no basis to serve them. And "without proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *King*, 694 F.3d at 655.

There does seem to be an exception to this service rule if enjoining the non-party is necessary to preserve the Court's power to adjudicate the dispute between the parties before it. *See In re N.A.A.C.P., Special Contribution Fund*, 849 F.2d 1473 (table), 1988 WL 61504, at *4

(6th Cir. 1988) (citing *United States v. Hall*, 472 F.2d 261, 265 (5th Cir. 1972)). But this Court does not need to enjoin the Non-Parties to adjudicate whether Westbrooks retaliated when Beasley commented on his foul language or to adjudicate whether McClure retaliated when Beasley inquired into the status of his grievances. So this exception does not apply.

Personal jurisdiction aside, Beasley points out that Federal Rule of Civil Procedure 65(d)(2) contemplates that an injunction may extend to a party's "officers, agents, servants, employees, and attorneys" and anyone "in active concert or participation" with those entities or the party. Beasley contends that Lewis ("who moved up the ranks when Westbrooks' retired") and the others he seeks to enjoin were at his correctional facility "when [he] filed his initial complaint," and that they "are all acting in concert and participation [with and] on behalf of Defendant McClure and Westbrooks[.]" (R. 63, PID 522.) The Non-Parties are doing so by, among other things, sabotaging Beasley's legal copies and mail and denying him access to the law library. (*Id.*)

There are two closely-related ways to understand the language of Rule 65(d)(2) upon which Beasley relies. One is that it permits a Court to enjoin those who aid or abet parties; the other is that it permits a Court to enjoin those who are in privity with parties. *See* Charles A. Wright *et al.*, 11A Fed. Prac. & Proc. Civ. § 2956 (3d ed.) ("[P]ersons who are not actual parties to the action *or in privity with any parties* may not be brought within the effect of [an injunction] merely by naming them in the order. The only significant exception to this rule involves nonparties who have actual notice of an injunction *and are guilty of aiding or abetting or acting in concert with a named defendant or the defendant's privy* in violating the injunction." (emphases added)). Thus, "[a] corporate officer, agent, or employee *who acts on his own behalf* will *not* be deemed to be included in a decree enjoining a corporation and 'its agents, servants,

9

employees, attorneys and all persons in active concert or participation with any of them.'" *Id.* (emphases added).

Here, even without hearing from the Non-Parties (and they have the right to be heard on the issue, *see Lake Shore Asset Mgmt. Ltd. v. Commodity Futures Trading Comm'n*, 511 F.3d 762, 767 (7th Cir. 2007)), the Court concludes that the language of Rule 65(d)(2) does not apply to the Non-Parties. First, Beasley has not shown that the Non-Parties are aiding or abetting Westbrooks and McClure. Westbrooks apparently no longer works at Beasley's correctional facility. As for McClure, Beasley merely asserts that one of the individuals he seeks to enjoin, Dennis Davis, "is in a personal relationship" with her. But this is a vague and conclusory statement that does not convince the Court that Davis is aiding or abetting McClure to retaliate.

And the privity interpretation of Rule 65(d)(2)'s language does not help Beasley either. "[T]he privity concept is restricted to persons so identified in interest with those named in the [injunction] that it would be reasonable to conclude that their rights and interests have been represented and adjudicated in the original injunction proceeding." Charles A. Wright *et al.*, 11A Fed. Prac. & Proc. Civ. § 2956 (3d ed.). Here, the Court is not convinced that in defending themselves in this litigation, Westbrooks and McClure would put forward the same defenses, with the same vigor, as the Non-Parties would (if they were parties). Indeed, aside from the general umbrella of harassment and retaliation, the Non-Parties are alleged to have engaged in conduct that differs from Westbrooks' alleged retaliation for foul language and McClure's alleged retaliation for inquiring about grievances. So any injunction of the Non-Parties under the concept of privity would also be improper.

In sum, the Court cannot exercise personal jurisdiction over Fish, Bah-Scott, Charlotte Davis, Dennis Davis, Lewis, Robbins, Butler, or Stanfill. And the language of Rule 65(d)(2) that

permits injunctions to extend to non-parties does not apply to these individuals. Accordingly, Beasley's motion will be denied on these grounds.

**B.**

Although the Court does not need to proceed any further, there is another, independent reason Beasley's motion must be denied: the preliminary relief sought is not related to the conduct alleged in the complaint.

Magistrate Judge Holmes' found as much and Beasley objects. Beasley says that his "requested relief is indeed related to his claims of retaliation issues in his suit." (R. 60, PID 522.) According to Beasley, he has "shown a pattern of continued retaliation at the hands of prison officials" and has established a relationship between the retaliation alleged in his motion "and the conduct that gave rise to the claims in his complaint." (R. 63, PID 522.) The Court disagrees.

"'The purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was or will be harmed through the illegality alleged in the complaint.'" *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)). As such, "'a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'" *Colvin*, 605 F.3d at 300 (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)).

*Devose* illustrates this rule. There, a prisoner claimed that prison officials had provided inadequate medical care for injuries sustained during transport. 42 F.3d at 471. The prisoner "later sought a preliminary injunction, contending prison officials had filed trumped-up disciplinary charges against him because of [the] lawsuit and were making him perform work

duties beyond his capabilities." *Id.* The Eighth Circuit explained that the prisoner's motion was "based on new assertions of mistreatment" that were "entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit." *Id.* The Court held that while the new assertions may have supported "additional claims against the same prison officials," they could not "provide the basis for a preliminary injunction in [the same] lawsuit." *Id.*

The same is true here. Beasley's complaint, especially following Judge Sharp's initial screening, is primarily about Westbrooks' improper handling of writing on Beasley's cell door, an unfair disciplinary charge relating to that writing, an unfair disciplinary proceeding relating to that charge, and McClure's retaliation for Beasley's inquiry about grievances apparently related to Westbrooks' conduct, the charge, and the proceeding. This all occurred in July 2016 or within a few months thereafter. Yet the harm asserted in Beasley's preliminary-injunction motion is primarily stolen or destroyed papers, including legal materials, retaliation for complaining about stolen or destroyed papers, lack of access to the law library, and mail tampering. This all occurred in May 2017 or within a few months thereafter.

True, under Beasley's account, there are some connections between the personnel and conduct alleged in the complaint and the harm Beasley seeks to enjoin. But they are no different than in *Devose*. And the purpose of preliminary-injunctive relief is to stop the conduct alleged in the complaint as a means of preventing irreparable harm (pending trial). *See Colvin*, 605 F.3d at 300. Here, the conduct alleged in the complaint centered on correctional officers' harassment and retaliation related to a writing on Beasley's cell door. Thus, enjoining the conduct alleged in the complaint would do little to prevent the harm Beasley says he is now suffering. *See Omega*, 111

12

F.3d at 16 ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.").[1]

## IV.

Accordingly, the Court OVERRULES Beasley's objections to Magistrate Judge Holmes' finding that a court generally cannot enjoin non-parties and that an injunction generally will not issue where the harm alleged in the motion is unrelated to the conduct alleged in the complaint. It follows that the Court ACCEPTS Magistrate Judge Holmes' recommendation to deny Beasley's motion for a temporary restraining order and a preliminary injunction. Beasley's motion (R. 49) is thus DENIED.

                                                      s/Laurie J. Michelson
                                                     LAURIE J. MICHELSON
Dated: January 3, 2018                              U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 3, 2018.

                                                       s/Keisha Jackson
                                                       Case Manager

---

[1] One court has framed the test slightly differently: "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant relief of the same character as that which may be granted finally." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (internal quotation marks omitted.) But applying this test still leads to the same result: the relief sought in the complaint (removal of the disciplinary infractions for the cell-door writing and monetary damages) is of a different character than the relief sought by the preliminary-injunction motion (enjoining a host of officers from "harassing, threatening, [and] intimidating [Beasley], and . . . hindering [Beasley's] pursuit of a legal claim").